**BUTLER v. BUTLER. (No. 1078.)**

(Court of Civil Appeals of Texas. Beaumont. May 16, 1924. Rehearing Denied Nov. 5, 1924.)

1. Divorce ⟐⟐108—Allegations of wife's petition showing ability to support children held not to present issue.

Where pleadings were sufficient to sustain award of children to wife, independently of her ability to support them, allegations of her petition that she was able to support and educate them out of her separate estate, *held* not to present issue of their support and education.

2. Divorce ⟐⟐324—Father liable for support of children awarded mother, unless relieved thereof by decree.

After divorce, father is liable for support of children awarded to mother, unless relieved thereof by decree, even if mother is well able financially to support them.

3. Divorce ⟐⟐308—Support of children requires affirmative order or one clearly implying determination of issue.

Under Rev. St. art. 4634, support of children is issue distinct from merits of divorce, and from their custody, and can be disposed of only by affirmative order, or by order so clear as to embrace issue by necessary implication.

─────────────────────────────────
⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Divorce ⬤═308—Decree ignoring issue of support of children held not res judicata as to such issue.**

Where issue as to support of children awarded to wife, even if raised by pleadings, was ignored in decree, no inference could arise that it was involved in court's disposition of issues determined, and as to such issue decree was not res judicata.

**5. Divorce ⬤═324—Divorced husband supplying money to minor children in wife's custody held relieved of giving money to wife for their support and maintenance.**

Where divorced husband gave children in wife's custody large sums of money, he was thereby relieved of supplying funds to wife for their support, and it was her duty to limit her own expenditures for their support and education, so as to give husband credit for such advances.

**6. Divorce ⬤═324 — That divorced husband sent money to children in wife's custody held to raise inference he intended to discharge his duty of supporting them.**

Where divorced husband, whose duty it was to support children awarded to wife, sent large sums of money to children, inference arose that he intended money to be applied to their support, in absence of evidence that it was intended as gift.

**7. Appeal and error ⬤═846(5)—In absence of conclusions of fact, judgment not disturbed if supported by pleadings and evidence.**

It is duty of appellate court, in absence of conclusions of fact, to sustain judgment supported by pleadings and reasonable inferences from evidence.

**8. Divorce ⬤═312 — Judgment for children's support held to show court did not credit him with advances.**

Where divorced husband, whose annual cash income was $6,000, gave $12,800 to his minor daughters during three-year period, judgment of over $11,000 to wife for their support and education for three years was so out of proportion to husband's legal liability that inference could not be indulged that court credited husband with money advanced by him.

**9. Divorce ⬤═324—Husband's financial and social status after decree held measure of his duty to supply children with necessaries.**

Duty of divorced husband to supply necessaries to children in wife's custody is to be measured by his financial and social status after decree, and not by financial and social status of wife, nor by their combined financial condition before decree.

On Rehearing.

**10. Appeal and error ⬤═1140(2)—Jurisdiction of appellate court to order remittitur limited to excessive verdict resulting from erroneous application of law.**

Jurisdiction of appellate court to order remittitur should be limited to cases of excessive verdicts rendered by erroneous application of law to facts, and should not extend to independent review of facts having no relation to trial court's conclusions.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by Cleora G. Butler against J. D. Butler. Judgment for plaintiff, and defendant appeals. Reversed, and remanded for new trial.

Gordon, Lawhon, Davidson & Pool, of Beaumont, for appellant.

Holland & Holland, of Orange, for appellee.

WALKER, J. This suit was instituted by appellee, who is the divorced wife of appellant, to recover of him the sum of $40,849.37, which she alleges was expended by her out of her separate estate in the support of two minor daughters born to her and appellant during their marriage. On her allegations, she expended this sum in about three years; that is, from the granting of the divorce on the 12th day of May, 1920, until the entry of this judgment, in 1923. On a trial to the court without a jury, judgment was entered in appellee's favor for $11,458.77. It is conceded that appellee actually expended all sums of money set out in her petition. All of the items alleged by her, which were fully itemized, were supported by her evidence, and appellant concedes and asks this court to give full weight to all her testimony.

[1] His first contention is that the judgment awarding appellee the divorce and custody of the children taxed her with the necessary expenses of their support and education. He admits that the decree contains no direct order to that effect; but contends that the judgment, in the light of the allegations in appellee's petition, should be given the effect of charging her with all such necessary expenses, and that the issues involved in this litigation are therefore res adjudicata. In her petition for divorce appellee made certain allegations against appellant, which, if true, made him an improper person for the custody of these children, as contrasted with the rights of appellee. She also alleged:

"That during the marriage of plaintiff and defendant they have had born to them as issues of such marriage two children, both of whom are girls, the older of which is Catherine Nelda Butler, about 17 years of age, and the other, Jewel Dean Butler, about 11 years of age; that plaintiff is able to bring up and educate said children properly, in that she is possessed of an independent income from her separate property in excess of $10,000 per year."

The facts show that the community estate of appellant and appellee, partitioned by agreement before the divorce was granted, was of the reasonable value of $200,000, of which appellant was given one half and appellee the other half, and that appellee owned in her own right, in addition to her

community property, other property of the value of $250,000.

[2] On authority of Gulley v. Gulley, 111 Tex. 233, 231 S. W. 97, 15 A. L. R. 564, it must be conceded that the father is liable to the mother for the support and maintenance of the children of the marriage, after its dissolution by divorce, when the custody of the children has been awarded to her, unless he is relieved of this burden by a judgment of the court. That is the rule, as we understand the cited case, though the mother is possessed of ample means, and is well able financially to support the children. On facts very similar to these, after a thorough review of the authorities of this state, Judge Greenwood said, in the Gulley Case: .

"These cases are conclusive that the obligation of the father is not discharged by the loss of the custody of his children. As the head of the family he is primarily responsible for the children's support prior to divorce. Continuing the head of a family, of which the children remain a part, subsequent to the divorce and the loss of their custody, his primary liability continues. * * *"

The clear holding of the Gulley Case is that a father can only be relieved of this primary liability for the support and education of his children by a decree of the court imposing that liability upon the mother.

Does a construction of the judgment awarding appellee the custody of the children, read in the light of her petition, necessarily import that she was charged with their support? It does not so order in express terms. The pleadings are sufficient to sustain the award to her of the children, on grounds independent of her allegations as to her ability to support and maintain them. She did not propose, in her pleadings, directly to relieve appellant of the burden imposed upon him by law as a condition of the award to her of the children. For these reasons, we are of the opinion that the issue of the support and education of the children was not presented to the court by the pleadings, nor determined by him in his order awarding them to appellee.

[3] But if that issue was raised by the pleadings, it was not determined by the decree. Article 4634, Revised Civil Statutes, provides:

"The court pronouncing a decree of divorce from the bonds of matrimony shall also decree and order a division of the estate of the parties in such a way as to the court shall seem just and right, having due regard to the rights of each party and their children, if any; provided, however, that nothing herein contained shall be construed to compel either party to divest himself or herself of the title to real estate."

It thus appears that our statutes expressly recognize that the support of the children is an issue distinct from the merits of the divorce and from their care and custody. Judge Greenwood said in the Gulley Case:

"Where the court has provided for the children's support and education in the decree of divorce, such provision excludes liability therefor otherwise than as ordered by the court rendering the decree."

[4] That issue can be disposed of only as other final issues, that is, by an affirmative order or by an order so clear in its terms as to embrace the issue by necessary implication. Where, as in this case, the issue was not directly raised by the pleadings—or, if we are in error in that construction, then we say though the issue was raised by the pleadings but ignored in the decree—no inference can arise that it was involved in the disposition made by the court of the issues actually determined.

For the reasons given, it is our conclusion that the judgment granting a divorce to appellee and awarding her the custody of the children was not res adjudicata of the issues presented in this case.

[5] But appellee says, if he did rest under the burden of supporting his children, he has fully discharged this duty. On this defense, he advances the two following propositions:

"The obligation of the parent to support his children is measured by his financial and social status;" and "the obligation of a father to support his children is discharged by his giving to them sums of money in excess of his total income from all sources during the time, amounting to several thousand dollars, and being more than sufficient to meet their needs."

As we understand the facts of this case, during the period of time covered by appellee's allegations, appellant's income from all sources did not exceed $5,000 per year. During this period of time he actually gave to his children more money than his income. Part of this money was given by him to his older daughter, who was then a grown young lady, and part to the younger daughter. The money was sent to the children for the most part in checks, but with the knowledge of the mother. Though she protested against the father sending the money to the older daughter, and asked him not to do so, the money was actually received by that daughter with the knowledge of the mother. In one instance the mother herself joined in the indorsement of the checks. She personally received the money sent the younger daughter, indorsed the checks, and deposited the proceeds to the account of the younger daughter in one of the New York banks.

Appellee contends that appellant could only discharge the duty and obligation of supporting and educating his children by paying to *her* the necessary cost of their support. On that question, the facts of this case are identical with the facts in the Gulley Case, supra. There, as here, the mother was amply able to support her children from her

265 S.W.—27

separate estate, and did so, and then brought suit against the father to recover the sums so expended. In stating the rule regulating the father's continuing duty to support his children, Judge Greenwood said:

"Moreover, since we treat his duty as a continuing primary one, the father should not be held liable when he has actually supplied his children with their reasonable necessaries."

Thus it appears that our Supreme Court recognizes that the father has discharged his primary duty when he "has actually supplied his children with their reasonable necessaries." This statement of the law in a suit where the wife was suing to recover for necessaries furnished by her from her separate estate seems to us most significant. It can only mean that the father is not under the duty of supplying funds to the mother to be expended by her as her judgment dictates. If the duty rests on the father to support his children as "the head of a family of which the children remain a part," as said by Judge Greenwood, then the privilege is his to say how that shall be done.

[6] Resting under this burden, he sent the younger daughter large sums of money. The fact that he sent her this money when he was under the burden of her support must raise an inference that he intended that it should be so applied. Especially is this so when there is not a scintilla of evidence in the record that he intended it as a personal gift to this daughter to be set apart for her use at a future date. It is our judgment that appellee should have seen that this money was used by this daughter in her continuing support. Having failed to do this, she acted beyond the financial responsibility of appellant when she set apart this money for the use of the child at a future date, and herself supplied the child's necessaries. Also, as we have stated, the mother knew that appellant was supplying large sums of money to the older daughter. There is no showing in the record that this money was thrown away or wasted by this daughter. Appellant said that she protested against appellant's sending this money, that it interfered with her proper control of the daughter, as she could only control her through the purse strings. Knowing that the father was sending this money, there is no suggestion as to why she could not have limited her own expenses on this daughter's account by the amount that the father was sending. As appellant was under the primary duty of supporting this daughter, and as he was sending her money while resting under that duty, we believe it was the duty of the mother, who had been vested with her control, to limit her own expenses in such way as to give the father full credit for the money advanced by him. Yet we find from her allegations against appellant that she was charging him with such items as these:

"For clothing purchased between May 12, 1920, and March, 1923, $8,128.37 * * * for the expenses of a trip to Tennessee to attend a wedding, $300 * * * for one wrist watch, $600 * * * for one bar pin, $365 * * * for cash advanced $895,"

—totaling for the older daughter $17,338.95, and for the younger daughter $10,754.60, which, together with other items, made the total sum of $40,849.37, for which she sought recovery.

[7, 8] In the absence of conclusions of fact by the trial court, we cannot say which of these items were allowed by him, nor can we say which of the credits duly pleaded by appellant were allowed him. We recognize that it is our duty, in the absence of conclusions of fact, to sustain the judgment, provided it is supported by pleadings and by the reasonable inferences from the evidence, but on the showing made in this record we cannot escape the conclusion that appellant was not allowed by the court due credit for the money advanced by him to his daughters. To indulge that inference would be to recognize that he should be charged with the sum of about $27,000 for the support of these two girls for three years' time, which would be a sum so out of proportion to appellant's legal liability that in our judgment no trial judge would have awarded that sum.

[9] The evidence in this case shows that appellant and appellee were living in Beaumont, Tex., at the time of this divorce, and that immediately thereafter she moved to New York City, and there rented as a home for herself and two daughters an expensive apartment at an annual rental in excess of $3,000, and that she expended in furnishing this apartment $4,159.50. As to all her expenditures, she said:

"I will say that these charges (having reference to her itemized statement of expenses) were reasonable and proper charges for girls in their station in life."

This evidence did not afford any basis for the judgment entered against appellant. Appellee had carried her children from Beaumont of her own volition, which she had a perfect right to do, and had established for them a splendid home in the great metropolis, which she also had a perfect right to do, and for which she should be commended. It was answering the call in her heart as a mother to do all possible things to promote the happiness and welfare of her children. But the station in life thus created for these two girls by appellee was not the station occupied by the father, with an annual income of $5,000, and a personal fortune of only $100,000. Again quoting from Judge Greenwood's opinion in the Gulley Case:

"In determining the duty of the husband to supply necessaries to his children before or after divorce, it is to be borne in mind that his duty corresponds to his financial ability,

having due regard to all his lawful obligations, which may include those assumed to another wife and to other children, *and in no event is he liable for food, clothing, attention, or education other than such as is suitable to his and their circumstances in life.*" (Italics ours.)

This proposition by Judge Greenwood supports appellant in his contention that his responsibility to his children and to appellee was measured "by his financial and social status," and not by the financial and social status of appellee.

But appellee also said:

"I dressed them as they had always been dressed here in Beaumont; gave them what they had always been used to."

That testimony could not sustain the judgment. During the marriage relation between appellant and appellee, he had the control of the community fortune of $200,000, from the revenues of which it was his privilege and duty to support his family. He had the use of the family residence in Beaumont, which, though the separate property of appellee, was used by them as a home, and for which the community estate paid no rent. Also he was the managing director of great property interests belonging to appellee and other members of her family, from which he resigned after the divorce. Can it be said, under the rule announced by Judge Greenwood, that he was required to maintain his children in the same expensive way after he had been divested of one-half his fortune, of his home, and of his place in the business world? We do not think so.

We have reviewed those phases of appellee's testimony just reverted to in order to show that there is no basis in this record on which we could measure appellant's liability to appellee and order a remittitur. Because it is apparent on the face of this record that appellant was not given due credit for the sums of money advanced by him to his daughter, and because the judgment rendered by the court is without support in the evidence, and because the amount of the judgment is in excess of what could be legally charged against appellant, and because there is no basis in the record on which we would order a remittitur, the judgment of the trial court is reversed, and this cause remanded for a new trial.

HIGHTOWER, C. J. I agree with Judge WALKER that the judgment in this case should be reversed and the cause remanded, for the reasons stated in his opinion. I am not prepared, however, at this time, to assent to the conclusion that the judgment in the divorce suit between the parties can not be successfully interposed by appellant as a bar to the action now brought against him by the appellee. Appellant has sought to interpose it only by pleading it as "res adjudicata," and it may be that such plea is not available to him; but if the judgment in the divorce suit had been pleaded as an "estoppel by judgment," I feel at this time that we would have much difficulty in denying it.

## On Rehearing.

WALKER, J. Our statement of this case on original submission was taken from a very imperfect review of the facts made by the parties. Appellant's statement, though in most general terms, was not controverted by appellee either in her brief or on original submission, and it appeared to us that the parties were conceding that appellant's income was less than $5,000 per year, and that he had contributed more than that sum to his daughters. Appellee, at least, made no statement to the contrary. However, on this rehearing she seriously controverts these conclusions by an analysis of the statement of facts, which appellant has undertaken to answer.

We have again reviewed the facts, and, in view of the statement now made by appellee, we conclude:

(1) Appellant's cash income was about $6,000 per year.

(2) During this period, to quote from appellee's conclusions, appellant contributed to his daughters "$12,800."

(3) It is our conclusion from the record that appellant's stock dividends on certain stocks were consumed in stock losses on other investments.

(4) While there is no direct evidence in the record that appellee knew of all the money furnished by appellant to the older daughter, she did know of certain contributions, and we think the circumstances were sufficient to visit her with notice of whatever contributions were in fact made.

(5) We have given most careful consideration to appellee's legal propositions on this rehearing, and believe that our original opinion correctly disposed of these issues.

[10] As on original submission, appellee suggests on this rehearing that we review the facts which appear without dispute and order a remittitur, reducing the judgment to what in our opinion would be adequate compensation. We declined to do this, because it appeared to us that there was no basis in the record on which we could order a remittitur; that is to say, we were originally, and are now, of the opinion that the trial court did not apply to the facts the correct principles of law in assessing damages against appellant, and for us to undertake to do so would result not so much in a remittitur as in an independent review of the facts without relation to the trial court's conclusion.

The jurisdiction of this court to order a remittitur in a proper case is unquestioned, but we think it should be limited to those

cases where there has been an excessive verdict rendered on an application of the law of compensation to the facts of the record, so that in ordering a remittitur the appellate court would correct only the trial court's measure of damages. To undertake to make that disposition of this case would in effect make us an original trier of the facts, and such judgment as we might enter would be independent of, and bear no relation whatever to, the trial court's judgment. Our original opinion reflects that it was for this reason we declined to order a remittitur at that time. Because, however, of appellee's renewal of her request, we proposed to do so if all parties consented. Appellant in a measure accepted the offer of this court, however, with the suggestion that he preferred to go to the jury on the facts as to the extent of his lawful contributions to the support of his children, and on the question suggested by the Chief Justice of this court in his concurring opinion.

Doubting our jurisdiction to order a remittitur on the facts of this case, we must decline to do so, in view of the position now taken by appellant. It is therefore our order that the motion for rehearing be in all things overruled.